**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

|  |  |
|---|---|
| JOHN FRALISH, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No.: 21-937 |
| v. | **CLASS ACTION COMPLAINT** |
| CONCORD AUTO PROTECT, INC. and DOES 1-10, | **JURY DEMANDED** |
| Defendant. | |

Now comes the Plaintiff, JOHN FRALISH ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, and for his class action Complaint against the Defendant, CONCORD AUTO PROTECT, INC. ("Defendant"), Plaintiff alleges and states as follows:

## PRELIMINARY STATEMENTS

1.      This is an action for damages, injunctive relief, and any other available legal or equitable remedies, for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.*, resulting from the illegal actions of Defendant, in negligently, knowingly, and/or willfully placing through its agent(s), sales, solicitation, and/or other telemarketing calls to Plaintiff's telephone number, in violation of the TCPA and related regulations, specifically the National Do-Not-Call Registry and internal do-not-call provisions of 47 C.F.R. 64.1200(c) and (d), thereby invading Plaintiff's privacy. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

1

2.     According to the Federal Communications Commission's website, accessed on December 10, 2021 at https://www.fcc.gov/consumers/guides/stop-unwanted-robocalls-and-texts:

> The national Do Not Call list protects landline and wireless phone numbers. You can register your numbers on the national Do Not Call list at no cost… Telemarketers must remove your numbers from their call lists and stop calling you within 31 days from the date you register. Your numbers will remain on the list until you remove them or discontinue service – there is no need to re-register numbers.

3.     The TCPA was designed to prevent telephone calls like the ones described herein, and to protect the privacy of citizens like Plaintiff. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S.Ct. 740, 744 (2012).

4.     In enacting the TCPA, Congress intended to give consumers a choice as to how corporate and similar entities may contact them and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer." TCPA, Pub. L. No. 102–243, § 11. In support of this, Congress found that:

> [b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id*. at § 12; see also *Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at *4 (N.D.Ill. Aug. 10, 2012) (citing Congressional findings on the TCPA's purpose).

5.     Congress also specifically found that "the evidence presented to the Congress

indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call...." *Id.* at §§ 12-13.

6.      Persons like Plaintiff have no control to stop unsolicited telemarketing calls placed to them, whether automated or otherwise.

7.      In a recent decision, the Supreme Court interpreted the term "automatic telephone dialing system" and held that "[t]o qualify as an 'automatic telephone dialing system,' a device must have the capacity either to store a telephone number using a random or sequential generator ***or*** to produce a telephone number using a random or sequential number generator." *Facebook, Inc. v. Duguid*, 141 S.Ct. 1163 (2021) (emphasis added).

8.      In *Duguid*, the Supreme Court provided an example of such systems, stating: "For instance, an autodialer might use a random number generator to determine the order in which to pick phone numbers from a preproduced list. It would then store those numbers to be dialed at a later time." *Id*. at 1171-72 fn. 7.

9.      Further, both *Duguid* and the legislative history of the TCPA are clear that the original focus on prerecorded voice technology prohibition was the fact that such communications involved agentless calls, not on the question of whether a literal voice was used during those agentless calls. See Hearing Before the Subcommittee on Communications of the Committee on Commerce, Science and Transportation, United States Senate One Hundred Second Congress First Session July 24, 1992, Testimony of Robert Bulmash and Steve Hamm at pg. 11; 7 FCC Rcd. 8752 (F.C.C. September 17, 1992).

10.      The Sixth Circuit has also recognized this distinction: "Congress drew an explicit distinction between 'automated telephone calls that deliver an artificial or prerecorded voice message' on the one hand and 'calls place by 'live' persons' on the other." *Ashland Hosp. Corp.*

*v. Serv. Employees Int'l Union, Dist. 1199 WV/KY/OH*, 708 F.3d 737,743 (6th Cir. 2013).

11.     Similarly, the FTC has observed that "prerecorded calls are by their very nature one-sided conversations, and if there is no opportunity for consumers to ask questions, offers may not be sufficiently clear for consumers to make informed choices before pressing a button or saying yes to make a purchase." 73 FR 51164-01, 51167 (Aug. 29, 2008).

12.     Predictive dialers have long been considered automatic telephone dialing systems by the FCC. In fact, the FCC's first ruling on the TCPA in 1992 recognized the importance of restrictions on equipment such as predictive dialers. Referring in part to "predictive dialers" the FCC then opined that "both live [solicitation calls, such as with a predictive dialer] and artificial or prerecorded voice telephone solicitations should be subject to significant restrictions." 7 FCC Rcd. 8752, 8756 (F.C.C. September 17, 1992).

13.     Since 2003, the FCC has definitively held that predictive dialers qualify as an ATDS under the TCPA. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 18 FCC Rcd. 14014, 14115 ¶¶ 131-134 (2003).

14.     Similar to other autodialers, predictive dialers also call from a stored list of phone numbers, but utilize algorithms to "predict" when an agent will receive a live answer.

15.     Rather than an agent manually dialing numbers, predictive dialers are generally used by loading a list of numbers into the dialer which then dials the numbers and forwards the calls to agents. An agent then signals readiness by logging into the phone system, at which point they will be joined to a campaign and be put in a queue to be forwarded a call once it connects with a consumer.

16.     The FCC describes predictive dialers as follows:

> A predictive dialer is an automated dialing system that uses a complex set of algorithms to automatically dial consumers'

telephone numbers in a manner that "predicts" the time when a consumer will answer the phone and a telemarketer will be available to take the call. Such software programs are set up in order to minimize the amount of downtime for a telemarketer. In some instances, a consumer answers the phone only to hear "dead air" because no telemarketer is free to take the call

…

a predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers

…

Predictive dialers initiate phone calls while telemarketers are talking to other consumers and frequently disconnect those calls when a telemarketer is unavailable to take the next call…Predictive dialers reduce the amount of down time for sales agents, as consumers are more likely to be on the line when the telemarketer completes a call.

*Id.* at ¶¶ 8, fn. 31, 131, and 146.

17.     Plaintiff and the members of the proposed classes defined below received telemarketing calls placed to their cellular telephones, placed by or on behalf of Defendant, which were made without the prior express consent of the recipients of said calls.

## JURISDICTION AND VENUE

18.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as this civil action arises under a law of the United States, the TCPA.

19.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## PARTIES

20.     Plaintiff is an individual who was at all relevant times residing in the City of Mishawaka, County of St. Joseph, and State of Indiana.

21.     Plaintiff is a "person" as defined by 47 U.S.C. § 153(39).

22.     On information and belief, Defendant is a corporation of the State of New York, which is not registered with the Secretary of State to do business in Indiana, and whose principal place of business is located in King of Prussia, Pennsylvania.

23.     On information and belief, at all times relevant hereto, Defendant was engaged in the marketing and sale of automotive warranties.

24.     Defendant is a "person" as defined by 47 U.S.C. § 153(39).

25.     The true names and capacities of the Defendants sued herein as DOES 1-10 are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Each of the Defendants designated herein as a Doe is legally responsible for the unlawful acts alleged herein. Plaintiff will seek leave to amend his complaint to reflect the true names and capacities of the Doe Defendants when such identities become known.

26.     Plaintiff is informed and believes that at all relevant times, each and every Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course and scope of said agency and/or employment with the full knowledge and consent of each of the other Defendants. Plaintiff is informed and believes that each of the acts and/or omissions complained of herein was made known to, and ratified by, each of the other Defendants.

## FACTS COMMON TO ALL COUNTS

27.     On May 23, 2019, Plaintiff successfully registered his cellular telephone number ending in -4587 with the National Do-Not-Call Registry.

28.     During or about June of 2021, Defendant began placing unsolicited telemarketing calls and text messages to Plaintiff.

6

29.     Plaintiff had not previously sought out Defendant's services, nor had Plaintiff attempted to retrieve information from Defendant about its services. Therefore, Plaintiff did not have an established business relationship with Defendant, as defined under 16 C.F.R. § 310.4(b)(1)(iii)(B).

30.     Since on or about June 18, 2021, Plaintiff has received approximately 43 unsolicited telemarketing calls and text messages from Defendant on his cellular telephone number.

31.     The numbers which displayed on Plaintiff's called ID when he received telephone calls from Defendant include, but are not limited to (484) 685-3537, (484) 214-1498, (484) 408-0855, and (484) 493-4360.

32.     Upon information and belief, Defendant placed the same or substantially similar unsolicited telephone calls *en masse* to thousands of cellular telephone subscribers nationwide in an effort to market its services.

33.     Upon information and belief, Defendant placed such calls for the purposes of financial gain.

34.     Upon information and belief, Defendant constructed the content of the solicitation calls, including the script to be followed by Defendant's representatives during the calls.

35.     Upon information and belief, the dialing system used by Defendant to place the calls also has the capacity to, and does, dial telephone numbers stored as a list or in a database without human intervention.

36.     The short codes from which Defendant sent its text messages to Plaintiff include, but are not limited to, 474747 and 313313.

37.    The use of short codes is indicative of Defendant's use of an "automatic telephone dialing system" ("ATDS") as defined by 47 U.S.C. § 227(a)(1).

38.    Defendant's text messages were clearly part of a marketing campaign, as evidenced, for example, by the text message received by Plaintiff on June 25, 2021, which read:

> Concord Auto Protect- Flash Sale- 8
> Months    Free+$0.00    Deductible
> +Tire&    Rims    1-888-399-2811
> Mention: 5TYH26 Expires 6PM EST
> STOP to end

39.    Upon information and belief, Defendant sent or transmitted, or had sent or transmitted on its behalf, the same or substantially similar unsolicited text messages *en masse* to thousands of cellular telephone subscribers nationwide in an effort to advertise Defendant's products and services.

40.    Upon information and belief, the marketing text messages were sent by Defendant for the purposes of financial gain.

41.    Upon information and belief, Defendant constructed the content of the marketing text messages, including the exact language of each message, as well as the timing of the sending of the message campaign.

42.    The text messages sent to Plaintiff were impersonal and based on a template.

43.    Upon information and belief, the automated text messaging system used by Defendant to send the text messages to Plaintiff has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

44.    Upon information and belief, the automated text messaging system used by Defendant to send the text messages to Plaintiff also has the capacity to, and does, dial telephone numbers stored as a list or in a database without human intervention.

45.     As evidenced by Defendant's messages, Plaintiff was not interacting with a live agent but rather an agentless text blast generated by a computer.

46.     Moreover, the messages sent to Plaintiff were drafted in advance and sent out automatically based on pre-programmed parameters.

47.     The text messages sent to Plaintiff's cellular telephone were thus placed via Defendant's *SMS Blasting Platform*, i.e., an "automatic telephone dialing system," ("ATDS") as defined by 47 U.S.C. § 227(a)(1) as prohibited by 47 U.S.C. § 227(b)(1)(A).

48.     The text messages sent to Plaintiff's cellular telephone were not sent by a live agent and thus created a one-sided conversation in which Plaintiff could not receive a response to his questions and/or concerns. The text messages also were sent in an automated fashion as a result of computerized campaigns that were pre-programmed in advance to send messages out to large groups of consumers all at once, either sequentially or via algorithmic dialing, i.e. in an automated fashion by a computer.

49.     In Merriam-Webster's Dictionary "voice" is defined as "an instrument or medium of expression."  It defines "artificial" as "humanly contrived…often on a natural model : MAN-MADE" and "lacking in natural or spontaneous quality."

50.     The messages sent to Plaintiff by Defendant employed a text message as an instrument or medium of expression to deliver an automatic message drafted in advance of being sent, i.e. that of an SMS message, to convey a telemarketing communication to Plaintiff.  The SMS blasting platform is a man-made humanly contrived program which allows companies to blast out such messages via non-spontaneous methods, i.e. automated methods similar to that of an assembly line in a factory.  Such SMS blasting devices are incapable of spontaneity, as they

must be programmed by the operator to automatically send messages out, *en masse*, pursuant to preprogrammed parameters.

51.     Accordingly, Defendant's messages utilized an "artificial voice" as prohibited by 47 U.S.C. § 227(b)(1)(A).

52.     Merriam-Webster's Dictionary, "prerecorded" is defined as "recorded in advance."  "Recorded" is defined as "to set down in writing."  The text messages sent to Plaintiff's cellular telephone via Defendant's SMS blasting platform were set down in writing in advance by Defendant, whose employees wrote out the standard automated messages that were to be sent to Plaintiff and other class members, and by way of preprogrammed SMS blasting, entered the prerecorded messages into the SMS Blasting platform, and thereafter sent these messages pursuant to scheduled blasts that were programmed by Defendant.  Thus, Defendant employed text messages as an instrument or medium of expression to deliver a prerecorded message drafted in advance of being sent.

53.     Thus, Defendant's message utilized a "prerecorded voice" as prohibited by 47 U.S.C. § 227(b)(1)(A).

54.     Plaintiff was not interested in the goods and services Defendant was offering in such solicitations. However, Defendant's calls and text messages continued.

55.     On June 30, 2021, Plaintiff sent Defendant a letter via United States Postal Service certified mail, return receipt requested, notifying Defendant that he was receiving unwanted calls and text messages from Defendant on cellular his telephone number, which had been registered on the National Do-Not-Call registry notifying Defendant that it did not have consent to contact him in this manner.

56.     United States Postal Service tracking information reflects that Defendant received Plaintiff's letter on July 6, 2021.

57.     Plaintiff has received numerous additional text messages from Defendant after August 6, 2021, which marked thirty days after Defendant's receipt of Plaintiff's letter.

58.     On information and belief, based upon Plaintiff's experiences in receiving Defendant's telephone calls and messages as set forth above, Defendant's calls and messages to Plaintiff were placed through the use of an automatic telephone dialing system ("ATDS") as defined in 47 U.S.C. § 227(a)(1).

59.     Plaintiff never gave Defendant his prior express request, invitation, or permission for Defendant to place its telemarketing calls and text messages to him, nor did Plaintiff have an established business relationship with Defendant.

60.     Defendant's unsolicited telemarketing calls and text messages were a nuisance to Plaintiff.

61.     Defendant's calls and text messages were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A).

62.     As a result of Defendant's acts and omissions outlined above, Plaintiff has suffered concrete and particularized injuries in fact, which include, but are not limited to, invading Plaintiff's privacy; intruding into his personal affairs; intrusion upon and occupation of the capacity of Plaintiff's telephone line without permission; wasting Plaintiff's time; and aggravation, annoyance, inconvenience, frustration, and similar categories of damages. The calls and text messages also constituted a form of the precise harm that Congress was attempting to prohibit with the TCPA, which was designed to remedy invasions of privacy and nuisances caused to Americans by automated telemarketing calls sent without consent. Plaintiff actually

suffered this precise injury by receiving the unwanted calls and text messages, and having his privacy so invaded through a disturbance of his solitude, and unwanted intrusion of his technology and personal space. Accordingly, Plaintiff has Article III standing to seek redress for these violations in Federal Court.

## CLASS ALLEGATIONS

63.     Plaintiff brings this action pursuant to Fed. R. Civ. P. 23, on behalf of himself and all others similarly situated, as a member of the proposed Classes defined below (collectively, "the Classes").

64.     Plaintiff brings this action on behalf of himself and all others similarly situated, as a member of the following proposed class (the "ATDS Class") defined as follows:

> All persons within the United States who received any telephone calls from Defendant to said person's cellular telephone made through the use of any automatic telephone dialing system or an artificial or prerecorded voice and such person had not previously provided express consent to receive such calls within the four years prior to the filing of the original Complaint, through the date of class certification.

65.     Plaintiff also brings this action on behalf of himself and all others similarly situated, as a member of the following proposed class (the "National Do-Not-Call Class") defined as follows:

> All persons within the United States whose telephone numbers were registered on the National Do-Not-Call Registry for at least 30 days, who had not granted Defendant prior express consent nor had a prior established business relationship with Defendant, or who had revoked such consent or prior established business relationship, who received more than one call made by or on behalf of Defendant that promoted Defendant's products or services within any 12-month period, within four years prior to the filing of this Complaint through the date of class certification.

66.     Plaintiff also brings this action on behalf of himself and all others similarly situated, as a member of the following proposed class (the "Internal Do-Not-Call Class") defined as follows:

> All persons within the United States who had not granted Defendant prior express consent nor had a prior established business relationship with Defendant, or who had revoked such consent or prior established business relationship, who requested that Defendant not call or message them for telemarketing purposes, who received more than one call within any 12-month period made by or on behalf of Defendant that promoted Defendant's products or services more than 30 days after the date such request was made, within four years prior to the filing of this Complaint through the date of class certification.

67.     Defendant, its employees and agents are excluded from the Classes. Plaintiff does not know the number of members in the Classes, but believes the Classes' members number in the thousands, if not more. Thus, this matter should be certified as a Class Action to assist in the expeditious litigation of the matter.

68.     This suit seeks only damages and injunctive relief for recovery of economic injury on behalf of the Classes and it expressly is not intended to request any recovery for personal injury and claims related thereto. Plaintiff reserves the right to expand the Classes' definitions to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

69.     The Classes are so numerous that the individual joinder of all of their members is impractical. While the exact number and identities of the Classes' members are unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff is informed and believes and thereon alleges that the Classes include thousands of members. Plaintiff alleges that the Classes' members may be ascertained by the records maintained by Defendant.

70.     This suit is properly maintainable as a class action pursuant to Fed. R. Civ. P. 23(a) because the Classes are so numerous that joinder of the Classes' members is impractical and the disposition of their claims in the Class Action will provide substantial benefits both to the parties and the Court.

71.     There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented.

72.     There are questions of law and fact common to the ATDS Class affecting the parties to be represented. The questions of law and fact common to the ATDS Class predominate over questions which may affect individual members of the ATDS Class and include, but are not necessarily limited to, the following:

a.     Whether the ATDS Class members' telephone numbers were called by Defendant using an automatic telephone dialing system or an artificial or prerecorded voice;

b.     Whether Defendant obtained the prior express consent of the ATDS Class members to call their cellular telephone numbers using an automatic telephone dialing system or an artificial or prerecorded voice;

c.     Whether Defendant's calls to the ATDS Class members were placed for emergency purposes;

d.     Whether Defendant violated the TCPA, 47 U.S.C. § 227, *et seq*.;

e.     Whether Defendant's conduct was knowing and/or willful;

f.     Whether Plaintiff and the members of the ATDS Class were damaged thereby, and the extent of damages for such violation; and

      g.     Whether Defendant and its agent(s) should be enjoined from engaging in such conduct in the future.

73.    There are questions of law and fact common to the National Do-Not-Call and Internal Do-Not-Call Classes affecting the parties to be represented. The questions of law and fact common to the National Do-Not-Call and Internal Do-Not-Call Classes predominate over questions which may affect individual members of the National Do-Not-Call and Internal Do-Not-Call Classes and include, but are not necessarily limited to, the following:

      a.     Whether the National Do-Not-Call and Internal Do-Not-Call Classes' members' telephone numbers were called by Defendant without Defendant having obtained prior express consent or an established business relationship with the National Do-Not-Call and Internal Do-Not-Call Classes' members;

      b.     Whether the National Do-Not-Call Class members' telephone numbers were called by Defendant more than 30 days after they registered such numbers on the National Do-Not-Call Class registry;

      c.     Whether the Internal Do-Not-Call Class members' telephone numbers were called by Defendant more than 30 days after the date the members requested their numbers be added to Defendant's internal do-not-call list;

      d.     Whether Defendant had a written policy, available upon demand, for maintaining an internal do-not-call list;

      e.     Whether Defendant violated the TCPA, 47 U.S.C. § 227, *et seq.*, by placing telephone calls to the National Do-Not-Call Class members without proper consent or an established business relationship;

f.    Whether Defendant violated the TCPA, 47 U.S.C. § 227, *et seq.*, by placing telephone calls to the Internal Do-Not-Call Class members without proper consent or an established business relationship;

g.    Whether Defendant's conduct was knowing and/or willful;

h.    Whether Plaintiff and the members of the National Do-Not-Call and Internal Do-Not-Call Classes were damaged thereby, and the extent of damages for such violation; and

i.    Whether Defendant and its agent(s) should be enjoined from engaging in such conduct in the future.

74.    As a person who received telephone calls and messages placed via an automatic telephone dialing system or an artificial or prerecorded voice, made by or on behalf of Defendant, without his prior express consent and not for emergency purposes, within four years prior to the filing of this Complaint, Plaintiff is asserting claims that are typical of the ATDS Class.

75.    As a person who received telephone calls and messages, made by or on behalf of Defendant, without his prior express consent, after his telephone number was registered on the National Do-Not-Call Registry for at least 30 days, within four years prior to the filing of this Complaint, Plaintiff is asserting claims that are typical of the National Do-Not-Call Class.

76.    As a person who received telephone calls and/or messages, made by or on behalf of Defendant, without his prior express consent, at least 30 days after he requested his telephone number be added to Defendant's internal do-not-call registry, within four years prior to the filing of this Complaint, Plaintiff is asserting claims that are typical of the Internal Do-Not-Call Class.

77.     Plaintiff has no interests adverse or antagonistic to the interests of the other members of the Classes.

78.     Plaintiff will fairly and adequately protect the interests of the members of the Classes. Plaintiff has retained attorneys experienced in the prosecution of class actions.

79.     A class action is superior to other available methods of fair and efficient adjudication of this controversy, since individual litigation of the claims of all Class members is impracticable. Even if every Class member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous issues would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments and would magnify the delay and expense to all parties, and to the court system, resulting from multiple trials of the same complex factual issues. By contrast, the conduct of this action as a class action presents fewer management difficulties, conserves the resources of the parties and of the court system and protects the rights of each Class member. Class treatment will also permit the adjudication of relatively small claims by many Class members who could not otherwise afford to seek legal redress for the wrongs complained of herein. Class-wide damages are essential to induce Defendant to comply with federal law. The interest of members of the Classes in individually controlling the prosecution of separate claims against Defendant is small because the maximum statutory damages in an individual action for violation of privacy are minimal. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

80.     The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the

interests of the other Class members not parties to such adjudications or that would substantially impair or impede the ability of such non-party Class members to protect their interests.

81.     Notice may be provided to the Class and Subclass members by direct mail and/or email notice, publication notice and by other reasonable means.

82.     Defendant has acted or refused to act in respects generally applicable to the Classes, thereby making appropriate final and injunctive relief with regard to the members of Classes as a whole.

83.     The size and definition of the Classes can be identified through Defendant's records and/or Defendant's agents' records.

**COUNT I**
**NEGLIGENT VIOLATIONS OF THE TCPA**
**47 U.S.C. § 227(b)**
**(On Behalf of the ATDS Class)**

84.     Plaintiff incorporates the allegations and statements made above in paragraphs 1-83 as if fully reiterated herein.

85.     The foregoing acts and omissions of Defendant constitute numerous and multiple negligent violations of the TCPA, including, but not limited to, each and every one of the above cited provisions of 47 U.S.C. § 227(b).

86.     As a result of Defendant's negligent violations of 47 U.S.C. § 227(b), Plaintiff and the ATDS Class members are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

87.     Plaintiff and the ATDS Class members are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## COUNT II
## KNOWING AND/OR WILLFUL VIOLATIONS OF THE TCPA
## 47 U.S.C. § 227(b)
### (On Behalf of the ATDS Class)

88.     Plaintiff incorporates the allegations and statements made above in paragraphs 1-83 as if fully reiterated herein.

89.     The foregoing acts and omissions of Defendant constitute numerous and multiple knowing and/or willful violations of the TCPA, including, but not limited to, each and every one of the above cited provisions of 47 U.S.C. § 227(b).

90.     As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227(b), Plaintiff and the ATDS Class members are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(C).

91.     Plaintiff and the ATDS Class members are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## COUNT III
## NEGLIGENT VIOLATIONS OF THE TCPA
## 47 U.S.C. § 227(c)
### (On Behalf of the National Do-Not-Call Class)

92.     Plaintiff incorporates the allegations and statements made above in paragraphs 1-83 as if fully reiterated herein.

93.     The foregoing acts and omissions of Defendant constitute numerous and multiple negligent violations of the TCPA, including, but not limited to, each and every one of the above cited provisions of 47 U.S.C. § 227, 47 U.S.C. § 227(c), and the implementing regulations of 47 C.F.R. 64.1200(c).

94.     As a result of Defendant's negligent violations of 47 U.S.C. § 227(c), Plaintiff and the National Do-Not-Call Class members are entitled to an award of $500.00 in statutory damages for each and every violation, pursuant to 47 U.S.C. § 227(c)(5).

95.     Plaintiff and the National Do-Not-Call Class members are also entitled to and seek injunctive relief prohibiting such conduct in the future.

**COUNT IV**
**KNOWING AND/OR WILLFUL VIOLATIONS OF TCPA**
**47 U.S.C. § 227(c)**
**(On Behalf of the National Do-Not-Call Class)**

96.     Plaintiff incorporates the allegations and statements made above in paragraphs 1-83 as if fully reiterated herein.

97.     The foregoing acts and omissions of Defendant constitute numerous and multiple knowing and/or willful violations of the TCPA, including, but not limited to, each and every one of the above-cited provisions of 47 U.S.C. § 227, 47 U.S.C. § 227(c), and the implementing regulations of 47 C.F.R. 64.1200(c).

98.     As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227(c), Plaintiff and the National Do-Not-Call Class members are entitled to an award of $1,500.00 in treble statutory damages for each and every violation, pursuant to 47 U.S.C. § 227(c)(5).

99.     Plaintiff and the National Do-Not-Call Class members are also entitled to and seek injunctive relief prohibiting such conduct in the future.

**COUNT V**
**NEGLIGENT VIOLATIONS OF THE TCPA**
**47 U.S.C. § 227(c)**
**(On Behalf of the Internal Do-Not-Call Class)**

100.    Plaintiff incorporates the allegations and statements made above in paragraphs 1-83 as if fully reiterated herein.

101.    The foregoing acts and omissions of Defendant constitute numerous and multiple negligent violations of the TCPA, including, but not limited to, each and every one of the above cited provisions of 47 U.S.C. § 227, 47 U.S.C. § 227(c), and the implementing regulations of 47 C.F.R. 64.1200(d).

102.    As a result of Defendant's negligent violations of 47 U.S.C. § 227(c), Plaintiff and the Internal Do-Not-Call Class members are entitled to an award of $500.00 in statutory damages for each and every violation, pursuant to 47 U.S.C. § 227(c)(5).

103.    Plaintiff and the Internal Do-Not-Call Class members are also entitled to and seek injunctive relief prohibiting such conduct in the future.

**COUNT VI**
**KNOWING AND/OR WILLFUL VIOLATIONS OF THE TCPA**
**47 U.S.C. § 227(c)**
**(On Behalf of the Internal Do-Not-Call Class)**

104.    Plaintiff incorporates the allegations and statements made above in paragraphs 1-83 as if fully reiterated herein.

105.    The foregoing acts and omissions of Defendant constitute numerous and multiple knowing and/or willful violations of the TCPA, including, but not limited to, each and every one of the above-cited provisions of 47 U.S.C. § 227, 47 U.S.C. § 227(c), and the implementing regulations of 47 C.F.R. 64.1200(d).

106.    As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227(c), Plaintiff and the Internal Do-Not-Call Class members are entitled to an award of $1,500.00 in treble statutory damages for each and every violation, pursuant to 47 U.S.C. § 227(c)(5).

107.    Plaintiff and the Internal Do-Not-Call Class members are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for a judgment against Defendant as follows:

a.      An order certifying the ATDS Class, the National Do-Not-Call Class, and the Internal Do-Not-Call Class, and appointing Plaintiff as Representative of the Classes;

b.      An order certifying the undersigned counsel as Counsel for the ATDS Class, the National Do-Not-Call Class, and the Internal Do-Not-Call Class;

c.      An order requiring Defendant, at its own cost, to notify all of the Classes' members of the unlawful conduct herein;

d.      Judgment against Defendant in the amount of $500.00 in statutory damages for each and every negligent violation of the TCPA by Defendant;

e.      Judgment against Defendant in the amount of $1,500.00 in statutory damages for each and every knowing and/or willful violation of the TCPA by Defendant;

f.   An order for injunctive relief prohibiting such conduct by Defendant in the future;

g.   Judgment against Defendant for Plaintiff's court costs and other litigation costs, and reasonable attorneys' fees; and

h.   Any other relief deemed just and proper by this Court.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues and causes of action in this action which are so triable.

RESPECTFULLY SUBMITTED,

JOHN FRALISH

By:   /s/ David B. Levin
      Attorney for Plaintiff
      Illinois Attorney No. 6212141
      Law Offices of Todd M. Friedman, P.C.
      111 W. Jackson Blvd., Suite 1700
      Chicago, Illinois 60604
      Phone: (224) 218-0882
      Fax: (866) 633-0228
      dlevin@toddflaw.com